# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL NO. 1:11-CV-00307-MR-DSC

| | |
|---|---|
| BENJAMIN R. SEAGLE,<br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>Defendant. | )<br>)<br>)<br>) **MEMORANDUM AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Judgment on the Pleadings" (document #12) and "Memorandum in Support ..." (document #13) both filed May 2, 2012; and Defendant's "Motion for Summary Judgment" (document #16) and "Memorandum in Support... " (document #17), both filed August 1, 2012. On August 15, 2012, Plaintiff filed a "Response to Defendant's Memorandum ..." (document #18).

On September 10, 2012, this case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Judgment on the Pleadings be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on December 31, 2007. He claims that he became disabled on January

1

15, 2007, due to a heart attack, high blood pressure, high cholesterol, diverticulosis, problems with his left thigh, post traumatic stress disorder, major depression, anxiety, and bipolar disorder. (Tr. 95-102, 155, 169). Plaintiff's application was denied initially and on reconsideration. A hearing was held on December 4, 2009. (Tr. 49-66).

On February 26, 2010, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr. 15-26). The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. The ALJ also found that Plaintiff suffered from status post C5-6 fusion, depression, bipolar disorder, anxiety, post traumatic stress disorder and a history of polysubstance abuse (Tr 18). The ALJ found these to be severe impairments within the meaning of the regulations. The ALJ also found that they failed to meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform light work.[2] The ALJ further found Plaintiff to be limited to unskilled work requiring little contact with the general public. (Tr 19).

The ALJ then concluded that Plaintiff could not perform any of his past relevant work as a certified nurse assistant, cashier, or machine operator. (Tr. 24).

The ALJ relied upon the Medical-Vocational Guidelines and the testimony of a vocational expert ("V.E.") to conclude that Plaintiff could perform other jobs existing in the national economy. (Tr. 25). The ALJ finally concluded that Plaintiff was not disabled within the

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

2

meaning of the Social Security Act. Id.

By notice dated September 19, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on November 14, 2011. Plaintiff argues that the ALJ erred in evaluating his credibility and RFC and in weighing several medical opinions. See Plaintiff's "Memorandum ..." at 1, 10-13 (document #13). The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[3] Plaintiff argues that the ALJ erred in assessing his credibility. Specifically, Plaintiff asserts that the ALJ improperly relied on his substance abuse history and lack of current psychiatric treatment in finding that his reported mental health symptoms were not as severe as alleged. Plaintiff's Brief ("Pl.'s Br.") at 10-12. A review of the ALJ's decision reveals that her credibility assessment is supported by substantial evidence.

The determination of whether a person is disabled by non-exertional pain or other

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's status post C5-6 fusion, depression, bipolar disorder, anxiety, post traumatic stress disorder and history of polysubstance abuse − which could be expected to produce some of the symptoms he claims. Accordingly, the ALJ found Plaintiff to have met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not consistent with the objective evidence in the record. 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.") The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d

5

1453, 1456 (4th Cir. 1990). The ALJ is accorded deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

In comparing Plaintiff's testimony with other evidence in the record, and considering the factors outlined in 20 C.F.R. sections 404.1529(c)(3) and 416.929(c)(3), the ALJ determined that Plaintiff's subjective complaints were not completely credible. (Tr. 19-24). The ALJ recounted Plaintiff's hearing testimony, noting his statements that he stopped working in January 2007 after undergoing spinal fusion surgery and suffering a heart attack. Plaintiff also testified about being diagnosed with a tumor in his left shoulder and trauma to his brain, experiencing pain in his stomach and legs, and having bowel problems. (Tr. 19, 53-55). Plaintiff testified about difficulties with concentration and memory. He also described problems with sleep, including nightmares and sleeping more than normal. (Tr. 19, 55). The ALJ cited Plaintiff's testimony that he suffers anxiety attacks and that he was diagnosed with post traumatic stress disorder. (Tr. 19, 56). Plaintiff also described a poor appetite, lack of energy, and difficulty coping with stress. (Tr. 19, 59). The ALJ noted that Plaintiff's complained of sexual side effects, dizziness, and loss of balance from his medication. (Tr. 19, 58). Plaintiff testified about his daily activities, stating that he watched television, but preferred listening to music because television aggravated his panic attacks. (Tr. 19, 58). He stated that he was unable to perform "simple" work due to his anxiety and depression. (Tr. 59).

The ALJ determined that Plaintiff's subjective statements were credible only to the extent that he was restricted to unskilled light work involving little contact with the general public. (Tr.

6

20). The ALJ explained that Plaintiff's subjective statements were not supported by the objective medical evidence.[4] The ALJ acknowledged Plaintiff's history of mental health treatment, including hospitalizations for depression and suicidal thoughts in 2003, but noted that even then Plaintiff was cooperative and fully oriented. (Tr. 20, 223-224, 228, 232-233, 632-633, 641-642, 645-646). His attention and memory were intact, and his thought processes were logical and goal oriented. (Tr. 224-225, 229, 233, 633, 642, 646). Treatment notes from a period of incarceration in 2005 show that Plaintiff was oriented, his speech was clear and coherent and his memory was intact. While his mood was mildly dysphoric, he demonstrated appropriate affect. (Tr. 242, 244, 251). Plaintiff presented as polite and cooperative, and he reported getting along with others and enjoying a computer class, reading, and playing cards. (Tr. 242, 244, 251). Plaintiff presented as engaged, calm, and oriented in three spheres with normal speech when he was evaluated by a licensed social worker at Appalachian Counseling, LLC In June 2007. (Tr. 748). During examinations by Dr. Patti Snodgrass in July, August, and September 2007, Plaintiff demonstrated good eye contact, his thoughts were clear and goal-directed, and he denied suicidal ideation. (Tr. 383-384, 387). His sleep and energy were reported as "okay," and later, as "improving." (Tr. 383-384).

The ALJ also cited the February 4, 2009 report of consultative psychiatrist Dr. Anthony Carraway as evidence contradicting Plaintiff's subjective statements. (Tr. 22). Dr. Carraway observed that Plaintiff made good eye contact and was oriented with normal speech. No psychomotor agitation or retardation was present and there was no evidence of thought disorder.

---

[4] Plaintiff only challenges the ALJ's assessment of the credibility of his statements regarding his mental health symptoms. (Pl.'s Br. at 10). Plaintiff does not assign error to the ALJ's assessment of his subjective reports about his physical impairments.

(Tr. 539-540). His attention and concentration were intact, but Dr. Carraway observed a mild to moderate impairment of short-term memory and mild impairment of immediate memory. (Tr. 22, 541). Plaintiff's ability to understand, retain, and perform simple instructions was minimally to mildly impaired. (Tr. 22, 541). Dr. Carraway concluded that Plaintiff had moderate, that is, non-disabling difficulties with social and interpersonal skills. (Tr. 22, 541).

The ALJ next found that Plaintiff's daily activities were inconsistent with his subjective complaints. Plaintiff testified about having poor memory and concentration and stated that his roommate "has to do everything." However, he told Dr. Carraway that he reads, cares for three chihuahuas, does "little normal things" around the house, shops, and prepares meals. (Tr. 23, 55-56, 539). In a Third Party Function Report completed in January 2008, Plaintiff's roommate reported that Plaintiff prepared small meals, watched television, did laundry and cleaning, went shopping, and had no problems getting along with family, friends, neighbors, or others. (Tr. 160, 162-163, 165).

The ALJ found that Plaintiff's history of mental health treatment, including hospitalizations for depression and suicidal thoughts in 2003, occurred after he stopped taking his medication and while he was abusing cocaine and alcohol. (Tr. 20, 24, 223, 227, 232, 615, 632, 640, 645). During his period of incarceration in 2005, Plaintiff was sober and reported to treatment providers that he noticed secondary benefits to sobriety, including better sleep, a good appetite, getting along well with others, and enjoying leisure activities. (Tr. 20, 242). Although Plaintiff argues that the ALJ erred in citing his history of drug and alcohol abuse in her assessment of his credibility, this Court has found that a claimant's substance abuse may be considered in assessing credibility. Goforth v. Astrue, No. 1:10cv102, 2011 WL 6019956, at *8

(W.D.N.C. Dec. 2, 2011) (affirming ALJ's finding that plaintiff's possible drug use diminished his credibility); Martindale v. Astrue, No. 1:09cv466, 2011 WL 1103770, at *8 (W.D.N.C. Feb. 24, 2011) (finding ALJ appropriately considered plaintiff's withdrawal symptoms from drugs and alcohol, in finding that his complaints of disabling seizures lacked credibility).

A determination as to whether substance abuse is a contributing factor material to the determination of disability is made only after an individual is otherwise found disabled. 20 C.F.R. §§ 404.1535(a), 416.935(a). Since Plaintiff was not found disabled, a determination as to the materiality of his substance abuse was not required.

Plaintiff also argues that the ALJ's credibility assessment warrants remand because she misstated some facts. Plaintiff points to the ALJ's statement that Plaintiff consumed "as much as two-fifths of alcohol a day," and her later statement that "[t]he evidence does not indicate current psychiatric treatment." (Pl.'s Br. at 10-11; Tr. 22, 24). The ALJ noted Plaintiff's alcohol consumption while reviewing the information contained in Dr. Carraway's report. (Tr. 22). Plaintiff informed Dr. Carraway that he was consuming as much as two-fifths of alcohol per day in the past. The ALJ did not reference Plaintiff's later statement to Dr. Carraway that he presently drank no more than three beers at a time. (Tr. 22, 538-539). Even if the ALJ relied on Plaintiff's consumption of two-fifths of alcohol per day rather than three beers, she cited other evidence of record that substantially supports her credibility analysis. The ALJ properly relied on the objective medical evidence and Plaintiff's daily activities. Hosey v. Astrue, No. 2:11-cv-42, 2012 WL 667813, at *7 (W.D.N.C. Feb. 6, 2012) (finding ALJ's reliance on mistaken belief that plaintiff tested positive for THC in his credibility assessment was harmless because ALJ based his credibility finding on other factors as well, including plaintiff's daily activities and

9

medical opinions).

Contrary to Plaintiff's argument, the ALJ's finding that "[t]he evidence does not indicate current psychiatric treatment, and only prescribed medications for anxiety" is accurate. (Pl.'s Br. at 11; Tr. 24). The record shows that Plaintiff receives psychotropic medications from the Transylvania County Volunteers in Medicine Clinic, where he has also received treatment for hypertension, an abscessed tooth, and right knee pain. (Tr. 856, 859-869). There is no indication that Plaintiff is currently being seen by a psychiatrist.[5] While Plaintiff refers to a December 3, 2009, note from R. Jane Ferguson, LPC, as evidence of psychiatric treatment, the record is clear that Ms. Ferguson is a licensed professional counselor. (Tr. 976).

In view of the objective medical evidence along with Plaintiff's daily activities, the ALJ properly determined that Plaintiff's subjective complaints were not completely credible.

Plaintiff argues that the ALJ improperly assessed the opinions of one-time consultative psychologist Dr. Karen Marcus and licensed professional counselor Jane Ferguson. (Pl.'s Br. at 12). Plaintiff also argues that the ALJ mistakenly cited the findings of consultative physician Dr. Dale F. Mabe to support her finding that Plaintiff retained the functional capacity for light work. (Pl.'s Br. at 13). A review of the record establishes that the ALJ evaluated these opinions in accordance with the Commissioner's regulations, and her assessments are supported by substantial evidence.

The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only

---

[5] Plaintiff was examined on three occasions between July 2007 and September 2007 by Dr. Snodgrass, but there is no evidence that she treated Plaintiff after September 2007. (Tr. 383-387).

10

if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

Plaintiff underwent a one-time consultative psychological evaluation by Dr. Marcus on November 4, 2008. (Tr. 948). Plaintiff provided Dr. Marcus with information about his medical history, daily activities, and functional abilities. (Tr. 950-951). She administered tests consisting of the Wechsler Adult Intelligence Scale-Fourth Edition, Minnesota Multiphasic Personality Inventory-2 Restructured Form, House-Tree-Person, Beck Depression Inventory-II, and Beck Anxiety Inventory. (Tr. 948, 952-955). Based upon Plaintiff's responses to these tests, Dr. Marcus diagnosed bipolar disorder, post traumatic stress disorder, alcohol abuse in early partial remission, substance abuse in full sustained remission, and personality disorder. (Tr. 956-957). Dr. Marcus posited that Plaintiff met the requirements of Listings 12.04, 12.06, and 12.08. (Tr. 959-969). She also opined that Plaintiff had mild restriction in activities of daily living; marked, that is, disabling, difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and three episodes of decompensation, each of extended duration. (Tr. 969).

The ALJ reviewed Dr. Marcus's findings and diagnoses, and noted her opinion that Plaintiff's impairments met the requirements of Listings 12.04, 12.06, and 12.08. (Tr. 21, 23). The ALJ acknowledged that Dr. Marcus did not have a treating relationship with Plaintiff, and

only examined him once at his attorney's request. (Tr. 21, 23). The ALJ explained that Dr. Marcus's opinion that Plaintiff's impairments were at the Listing-level of severity was not supported by her own evaluation and was also inconsistent with other medical evidence of record. (Tr. 23). The ALJ cited Dr. Marcus's findings that Plaintiff's scores in verbal comprehension, perceptual reasoning, working memory, and processing speed were in the extremely low range. However, Dr. Marcus also opined that these scores "seemed to be somewhat low given [Plaintiff's] reported history and functioning." (Tr. 23, 955-956). Despite finding that Plaintiff's impairments satisfied Listings 12.04, 12.06, and 12.08, Dr. Marcus recommended only that Plaintiff "could benefit from mental health treatment," including psychotherapy "to address his coping and management of affect" and from medication consultation. (Tr. 23, 957). The ALJ noted that despite her assessment of marked limitations in functioning, Dr. Marcus concluded that Plaintiff would be able to manage his own resources if awarded disability benefits. (Tr. 23, 957).

The ALJ further explained that Dr. Marcus's opinion is not consistent with other medical evidence in the record. (Tr. 23). Plaintiff was cooperative and fully oriented during his 2003 hospitalization for depression and suicidal thoughts. His attention and memory were intact, and his thought processes were logical and goal oriented. (Tr. 223-225, 228-229, 232-233, 632-633, 641-642, 645-646). Treatment notes from 2005 similarly reveal that Plaintiff was oriented, his speech was clear and coherent, his memory was intact, and he demonstrated appropriate affect. (Tr. 242, 244, 251). Plaintiff presented as polite and cooperative, reported getting along with others, and enjoyed taking a computer class, reading, and playing cards. (Tr. 242, 244, 251). Records from 2007 document that Plaintiff presented as engaged, calm, and oriented in three

12

spheres with normal speech. (Tr. 748). He demonstrated good eye contact, his thoughts were clear and goal-directed, and he denied suicidal ideation. (Tr. 383-384, 387). In February 2009, Dr. Carraway noted that Plaintiff made good eye contact, was oriented, his speech was normal, and he exhibited no psychomotor agitation, retardation or evidence of thought disorder. (Tr. 539-540). His attention and concentration were intact. Dr. Carraway observed a mild to moderate impairment in short-term memory and mild impairment of immediate memory. (Tr. 22, 541). Plaintiff's ability to understand, retain, and perform simple instructions was minimally to mildly impaired. (Tr. 22, 541). Dr. Carraway also concluded that Plaintiff had moderate difficulties with social and interpersonal skills. (Tr. 22, 541). This evidence is inconsistent with Dr. Marcus's assessment of marked limitations in functioning and her opinion that Plaintiff's impairments are of Listing-level severity. The ALJ appropriately evaluated Dr. Marcus's opinion.

Plaintiff also assigns error to the ALJ's treatment of a letter from Ms. Ferguson dated December 3, 2009. She reported providing Plaintiff with therapy for depression and post traumatic stress disorder in early 2009. (Tr. 976). Ms. Ferguson recounts Plaintiff's medical history, including his use of cocaine and spinal surgery, and states that Plaintiff is "markedly depressed," has trouble maintaining a schedule, and has difficulty keeping up with daily activities. She concluded that Plaintiff had been disabled and unable to work since January 2007. (Tr. 976).

The ALJ referenced Ms. Ferguson's letter in her decision and noted her treatment relationship with Plaintiff. The ALJ found that the evidence did not support Ms. Ferguson's opinion of disability. (Tr. 23). First, the ALJ found that Ms. Ferguson's opinion appeared to be

13

based solely on Plaintiff's complaints. Mastro, 270 F.3d at 178 (finding ALJ may accord little weight to a treating physician's opinion based mainly on claimant's subjective complaints). (Tr. 23). Ms. Ferguson did not support her opinion of disability with any objective medical findings. (Tr. 976). The ALJ also found that Ms. Ferguson's opinion was not supported by other evidence in the record. (Tr. 23). Dr. Carraway examined Plaintiff in February 2009, during the same time frame when Ms. Ferguson was treating him. Dr. Carraway observed that Plaintiff made good eye contact, was oriented, his speech was normal, he had no psychomotor agitation or retardation, and there was no evidence of thought disorder. (Tr. 539-540). His attention and concentration were intact, and Dr. Carraway observed only mild to moderate impairment of short-term memory and mild impairment of immediate memory. (Tr. 22-23, 541). Plaintiff's ability to understand, retain, and perform simple instructions was minimally to mildly impaired. (Tr. 23, 541). Dr. Carraway found that Plaintiff only had moderate difficulties with social and interpersonal skills. (Tr. 23, 541). While Ms. Ferguson stated that Plaintiff had difficulty keeping up with activities of daily living, Dr. Carraway noted that he was able to read, take care of three dogs, perform chores around the house, prepare meals, shop, and attend to his personal care. (Tr. 539, 976). His roommate also reported that Plaintiff prepares small meals, watches television, performs such household chores as laundry and cleaning, shops, and has no difficulty getting along with family, friends, neighbors, or others. (Tr. 160, 162-163, 165). This evidence contradicts Ms. Ferguson's opinion that Plaintiff is disabled. The ALJ appropriately declined to accept Ms. Ferguson's opinion that Plaintiff is disabled. (Tr. 23).

Finally, Plaintiff asserts that the ALJ erred when she relied on the report of consultative

examiner Dr. Mabe to support her Residual Functional Capacity finding for light work. (Pl.'s Br. at 13). More specifically, Plaintiff maintains that Dr. Mabe's examination findings are inconsistent with the requirements of light work. The ALJ's evaluation of Dr. Mabe's opinion is supported by substantial evidence.

On February 2, 2009, Dr. Mabe found Plaintiff was pleasant, cooperative and in no apparent distress. (Tr. 534). Examination of the extremities revealed no edema, present and equal pulses bilaterally, equal bilateral upper limb strength at 4-5, and equal bilateral lower limb strength at 4-5. (Tr. 535). Plaintiff's grip strength was 4/5 bilaterally. Plaintiff reported generalized decreased sensation in the left lower extremity compared to the right, but Dr. Mabe noted that there was no dermatomal pattern on examination. Plaintiff's gait was somewhat unsteady, and he stated that he was unable to walk on his heels and toes. Plaintiff was able to get on and off the examination table without assistance, and could squat approximately one-third of the way down while holding on to something. (Tr. 535).

The ALJ cited Dr. Mabe's report and stated that the examination "did not reveal any abnormal findings that would support limitations inconsistent with the stated residual functional capacity [for light work]." (Tr. 23). Dr. Mabe noted that Plaintiff had "[g]eneralized difficulty sustaining" strength in his upper and lower limbs. His strength was measured at 4-5 in both upper and lower extremities, which is indicative of near normal or reasonable strength.[6] (Tr. 535). This is consistent with the strength requirements for light work.

---

[6] Muscle strength is rated on a scale of 0 to 5. A rating of 4 means that the muscle can move against gravity and against resistance such as weight or the examiner's manual resistance. The amount of resistance is judged to be "reasonable for the age, weight, health, and normal status of the patient." A rating of 5 indicates normal strength. *See* <http://www.articlesbase.com/health-articles/muscle-strength-assessment-physiotherapy-764318.html> (visited July 25, 2012); <http://www.neuroexam.com/neuroexam/content.php?p=29> (visited July 25, 2012).

Plaintiff's unsteady gait does not preclude him from performing the requirements of light work. Dr. Carraway did not observe any gross disturbance in Plaintiff's gait two days after his examination by Dr. Mabe. (Tr. 541). Plaintiff's gait was also deemed normal by Dr. Marcus in November 2008, and on examination in June 2007, December 2007, January 2008, February 2008, April 2008, and May 2008. (Tr. 401-402, 458, 461, 502, 505, 520, 522, 525-526, 951). Dr. Mabe did not find that Plaintiff's ability to stand or walk was limited, but merely that his gait was unsteady. Dr. Mabe's observation is not indicative of an inability to perform the standing and walking requirements for light work.

Plaintiff's inability to squat completely also fails to impact his ability to perform light work. As Social Security Ruling 83-14 explains, the full range of light work considers that the individual can occasionally stoop, which is defined as bending the body forward and downward by bending the spine at the waist. Squatting is defined as sitting in a low or crouching position with the legs drawn up closely beneath or in front of the body. Plaintiff's argument appears to rest on the inaccurate assumption that stooping is synonymous with squatting. (Pl.'s Br. at 13) (citing SSR 83-10). Consequently, Dr. Mabe's notation that Plaintiff could not squat completely does not contradict the ALJ's Residual Functional Capacity finding for light work.

Although the medical records establish that the Plaintiff experienced symptoms and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from his combination of impairments, but was not disabled.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's RFC and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Judgment on the Pleadings" (document #12) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #16) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v.

Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Martin Reidinger.

**SO RECOMMENDED AND ORDERED**.

Signed: December 19, 2012

David S. Cayer
United States Magistrate Judge